**DIGGINS EQUIPMENT CORP., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 137–88C.

United States Claims Court.

July 11, 1989.

Richard J. Duffy, White Plains, N.Y., for plaintiff.

Paula J. Barton, Washington, D.C., with whom was Acting Asst. Atty. Gen., Stuart E. Schiffer, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

This action is before the court on parties' cross-motions for summary judgment. The dispute involves the proper interpretation of an amendment to a contract provision. Plaintiff contended that the amendment to a provision dealing with the combustion chambers of two boilers would have exclusive application to the combustion chambers. Defendant claimed that the amendment referred to the boilers as a whole.

## FACTS

Defendant, acting through the United States Army Corps of Engineers, issued a solicitation for bids for the refurbishing of two boilers. Potential bidders were given copies of the contract and drawings, and were encouraged to visit the site. The solicitation stated that all technical questions on plans and specifications were to be directed to Mr. J. Caspe of the New York District Corps of Engineers and a telephone number was provided. Plaintiff, Diggins Equipment Corp., noticed what appeared to be a discrepancy in Section 7.1 of the contract, dealing with the combustion chambers, and in May 1983 called the number provided in the solicitation. Plaintiff

sought clarification of whether the refractory located beneath the floor of the combustion chambers in the two boilers was to be removed during the course of demolition. Either Mr. Caspe or a person in his office instructed plaintiff to contact Tectonic Engineering, the firm which had prepared the plans and specifications. Plaintiff accordingly telephoned Tectonic Engineering and spoke with Mr. Louis Ares, who advised that the Corps of Engineers was preparing an amendment that would answer plaintiff's question. Amendment No. 4 to Section 7.1 soon followed on May 31, 1983.

On July 13, 1983, plaintiff was awarded the contract. Plaintiff's first action was to remove and replace the brickwork, refractory and insulation within the combustion chambers as per Section 7.1 and Amendment No. 4. Plaintiff interpreted the section and its amendment as applying only to the combustion chambers. Soon thereafter, plaintiff was notified by defendant that plaintiff's interpretation was inconsistent with the contract and that plaintiff was required to perform work outside the combustion chamber, *i.e.*, to remove and replace the insulation and tiles in the walls and the roofs of the boilers, and while doing so support outside water, gas and electric lines. Plaintiff disagreed with defendant, but under protest performed the additional work in the amount $79,733.42. Plaintiff then filed a claim for equitable adjustment with the contracting officer. Plaintiff's claim was denied. Having exhausted its administrative remedies, plaintiff brought a complaint in this court. Defendant responded with a motion for summary judgment, to which plaintiff cross-moved.

## DISCUSSION

■ Summary judgment is appropriate when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. RUSCC 56(c). Both parties are in agreement that there are no issues of material fact in dispute and that this case deals with interpretation of a contract—strictly a mat-

ter of law. The issue before the court, then, is whether or not Amendment No. 4 to Section 7.1 is ambiguous. A contract is ambiguous if it sustains the interpretations advanced by both parties. *Max Drill Inc. v. United States,* 192 Ct.Cl. 608, 627, 427 F.2d 1233, 1245 (1970). However, both interpretations must be reasonable. *Tri-Cor, Inc. v. United States,* 198 Ct.Cl. 187, 211, 458 F.2d 112, 126 (1972). In addition, contract terms are not to be rendered ambiguous by the mere fact that the parties disagree as to their meanings. There must be a reasonable uncertainty of meaning. *ITT Arctic Services, Inc. v. United States,* 207 Ct.Cl. 743, 767, 524 F.2d 680, 692–93 (1975); *Southern Constr. Co. v. United States,* 176 Ct.Cl. 1339, 1361–62, 364 F.2d 439, 453 (1966).

To determine whether an ambiguity indeed existed, the court in this instance needed only look to the contractual language. Section 7.1 reads:

Bridge walls exposed on all sides to radiant heat and the products of combustion shall be constructed of super-duty refractory not less than 18 inches thick; walls having only the front side exposed to radiant heat and the products of combustion shall have front facing and cap constructed of 9 inches of super duty refractory and back facing of not less than 9 inches of low duty firebrick. Base of the wall shall be a common brick.

Amendment No. 4 states:

All brickwork, refractory and insulation in the two boilers shall be replaced with materials of a similar type and thickness as the existing materials.

■ The interpretation of Amendment No. 4, in light of Section 7.1, is clear. Section 7.1 deals exclusively with the combustion chambers, and any amendment to that section would necessarily apply only to the combustion chambers as well. It is implausible to think that the combustion chamber provision could be stretched to include removal of an outside steel casing, demolition and replacement of insulation and tiles on the walls and roof, and support of outside gas, water, and high voltage electric lines, as well as removal and re-

placement of the brickwork, refractory and insulation within the combustion chambers. The court also notes that Amendment No. 4 made reference to brickwork, etc., "in" the two boilers. Work outside of the boiler was never mentioned in either Section 7.1 or Amendment No. 4. It is apparent that the scope of the work to be performed by plaintiff was limited to the inner parts of the two boilers and specifically, the combustion chambers. Thus, upon analysis of the contract provisions, the court finds that only one interpretation can reasonably be sustained by the contract; *i.e.*, only work inside of the combustion chamber was required. The court does not find the contract to be ambiguous.

■ Assuming, *arguendo*, that defendant's interpretation was reasonable, then Section 7.1 and Amendment No. 4 would have to be considered ambiguous. Defendant asserted that Amendment No. 4 applied to both boilers, inside and outside the combustion chambers. A contract is ambiguous when it is reasonably susceptible to more than one interpretation. *Tibshraeny Bros. Constr., Inc. v. United States*, 6 Cl.Ct. 463, 468 (1984). The ambiguity must then be classified as either patent or latent. A latent ambiguity is a hidden or concealed defect which is not apparent on the face of the document, could not be discovered by reasonable and customary care, and is not so "patent and glaring as to impose an affirmative duty on plaintiff to seek clarification." *Avedon Corp. v. United States*, 15 Cl.Ct. 771, 777 (1988). If the ambiguity in this case is latent, and plaintiff's interpretation is reasonable, plaintiff will prevail over an equally reasonable interpretation by defendant. *Ceccanti, Inc. v. United States*, 6 Cl.Ct. 526, 528 (1984); *A.K. Plumbing & Mechanical, Inc. v. United States*, 1 Cl.Ct. 716, 721 (1983). Defendant claimed that by visiting the site plaintiff would have noticed the water, gas and electric lines connected to the boilers and would have realized that those lines required work not mentioned in either the specifications or the drawings. This, defendant argued, constituted a patent ambiguity. Defendant also maintained that plaintiff, upon noticing the alleged ambiguity, did not "follow the instructions in the solicitation, but rather, sought the advice of an individual who had no authority to represent the government." The court, however, notes that plaintiff was directed by defendant to contact Tectonic Engineering by telephone to answer its question, and it was reasonable for plaintiff to follow that instruction. In so doing, plaintiff fulfilled its obligation to properly inquire into any alleged ambiguity.

Plaintiff contended that it was never under the impression that work outside of the combustion chamber was required and thus had no need to consider removal, support and replacement of the lines. Such work was not necessary inside the combustion chamber. Plaintiff found support of its position in the statements made by two experts in the field of engineering, who had extensive experience in government contracts. These experts opined that the wording of the contract, combined with the drawings, would lead a reasonable contractor to assume that only the inside work of repairing a combustion chamber was required by the contract.

The court finds plaintiff's arguments to be persuasive. Section 7.1 of the contract dealt only with the combustion chamber and neither it, nor Amendment No. 4, ever made mention of the outside of the boiler. Furthermore, necessary substantial detail was missing from the contract to intimate that outside work was contemplated by defendant. The court finds per the expert opinions that it is customary in the industry to provide substantial "outside" detail when work outside of the combustion chamber is involved. None of the standard detailed information needed for the type of work required outside of the combustion chamber of the boiler was included in the contract specifications. Plaintiff cannot be held to the subjective unexpressed intent of defendant. If the outside work was to be done, the specifications should have made it very clear. The outside work added nearly $80,000 to a contract worth $364,-900, yet no indication of work outside the combustion chambers of the boilers was made in the contract or by defendant.

"When the meaning of a provision is ambiguous and reasonable men could interpret the provision in different ways, the interpretation will be given to the document which is more favorable to the party who did not draft the provision." *Thanet Corp. v. United States,* 219 Ct.Cl. 75, 82, 591 F.2d 629, 633 (1979); *Kenneth Reed Constr. Corp. v. United States,* 201 Ct.Cl. 282, 289, 475 F.2d 583, 587 (1973); *Sturm v. United States,* 190 Ct.Cl. 691, 697, 421 F.2d 723, 727 (1970). The court thus finds that if an ambiguity existed it would be latent, and in light of the circumstances, plaintiff's interpretation would be reasonable.

## CONCLUSION

The court holds that the contract was clear and supports only one reasonable interpretation—plaintiff's. If an ambiguity existed, it would be latent and the provisions in question would be construed against defendant, the drafter of the provisions. Finally, correct procedures were followed by plaintiff to reconcile any possible ambiguities. For the foregoing reasons, plaintiff's cross-motion for summary judgment is granted and defendant's motion for summary judgment is denied. Plaintiff is entitled to an equitable adjustment to its contract of $79,733.42, plus statutory interest per 41 U.S.C. § 611 (1982), running from October 29, 1986. The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.